The STATE of Ohio, Appellant,

v.

MALOTT, Appellee.

[Cite as State v. Malott (1992), 79 Ohio App.3d 393.]

Court of Appeals of Ohio,
Highland County.

No. 792.

Decided April 21, 1992.

394

*Fred J. Beery,* Hillsboro City Law Director, for appellant.
*Michael P. Kelly,* for appellee.

HARSHA, Judge.

Appellant, state of Ohio, takes this appeal, pursuant to R.C. 2945.67 and Crim.R. 12(J), from a judgment of the Hillsboro Municipal Court granting appellee's, Raymond L. Malott's, motion to suppress evidence.[1] The appellant raises the following assignments of error:

"I. The trial court abused its descretion [*sic*] by refusing to allow the prosecutor to consult with the arresting officer prior to the state presenting its case and refusing to allow the state to examine after the court called the arresting officer as its own witness.

"II. The trial court erred in finding that the state failed to establish the proper calibration and RFI survey of the Intoxilyzer machine where the defense motion alleges improper calibration and RFI survey of a BAC Verifier machine.

"III. The trial court erred by allowing the appellee to proceed with its motion to suppress which did not conform to the requirements of Crim.R. 47."

Pursuant to App.R. 9(D), this case has been submitted upon the following agreed statement of the case:

"1. Defendant filed its motion [to suppress on] the 26th day of April, 1991, and the trial court held a hearing the 13th day of May, 1991 on said motion.

---

1. Regarding the application of Crim.R. 12(J) rather than Traf.R. 11(I), see *Toledo v. Fogel* (1985), 20 Ohio App.3d 146, 147–148, 20 OBR 180, 181–182, 485 N.E.2d 302, 303–305. See, also, *Defiance v. Kretz* (1991), 60 Ohio St.3d 1, 4, 573 N.E.2d 32, 34, where in *dicta* the Supreme Court recognized the state's right to appeal the granting of a pretrial motion to suppress a Breathalyzer test.

"2. The Honorable Jeffrey J. Lyle, Judge by Assignment, presided, the State was represented by Eugene Pyle and the defendant was represented by Michael P. Kelly.

"3. The following exchange occurred between the court and counsel at the start of the hearing:

" 'COURT: Are we ready to proceed?

" 'KELLY: I'll waive any opening, Your Honor.

" 'COURT: Mr. Pyle, do you wish to make any opening statement?

" 'PYLE: I'll waive any opening and reserve any answer.

" 'KELLY: I'll call the arresting officer, Sergeant Cornett, as if on cross, Your Honor.'

"4. Defense counsel Kelly proceeded to question the arresting officer.

"5. Sgt. Cornett was on duty in uniform in a marked police car on March 16, 1991, at 3:02 A.M. and had seven years experience as a deputy sheriff.

"6. At that time he observed the defendant on SR 73 South of Balentine Rd., while the officer was northbound and the defendant was southbound on a straight section of road.

"7. The road was rural with no other traffic and the officer was on routine patrol with a former deputy, Greenfield Police Officer Tim Hester.

"8. The officer was driving on a downgrade and the defendant was driving on an upgrade and the [*sic*] were separated by less than 1/10 of a mile when the officer first saw the defendant.

"9. At that time the officer observed the defendant drive over onto the white edge line, and the officer turned in the drive of a nearby business and proceeded southbound.

"10. Due to the early hour and the driving conduct of defendant, the officer decided to further observe the driving of defendant.

"11. The officer was traveling about 50 MPH and the defendant's speed was something less but at a safe speed.

"12. The deputy caught up with the defendant and made further observations.

"13. The defendant stopped in the roadway in the community of Berrysville partly left of center while the deputy was about 500 feet behind the defendant.

"14. The defendant was already stopped when the deputy noticed him and remained stopped for about three seconds, then turned left into a parking area adjacent to the roadway in front of defendant's residence.

"15. The officer turned in behind the defendant and activated his red lights, approached defendant, and found the defendant behind the wheel, keys in the ignition and engine running.

"16. There was no other vehicular traffic.

"17. The deputy requested defendant's operator's license and noticed that the defendant had bloodshot eyes and the odor of an alcoholic beverage.

"18. The officer requested that the defendant exit the vehicle, and gave a horizontal gaze nystagmus test, a walk and turn test and a one leg stand test.

"19. The officer testified that, in his opinion the defendant failed the tests and that he transported the defendant to the sheriff's office for an Intoxilyzer breath test.

"20. The defendant was read the refusal form pursuant to Department of Health regulations for taking the Intoxilyzer test.

"21. The Intoxilyzer machine was maintained by the Highland County Sheriff.

"22. A calibration check was performed on March 11, 1991, by another officer.

"23. Sgt. Cornett, a senior operator, performed the calibration check done on March 18, 1991, and the last RFI survey after the machine was serviced in December, 1990.

"24. The defense then rested.

"25. The State then requested the opportunity to speak with the officer before presenting the State's case, to which the defense objected.

"26. The court sustained this objection and refused to permit the State to speak with the officer, however, the court indicated that the State could have a recess if it agreed not to discuss the officer's testimony with him.

"27. The prosecutor interposed objections and exceptions to this procedure and declined to present any evidence.

"28. The court then questioned the officer as to the location of the stop.

"29. The prosecutor then requested the opportunity to examine the officer but was limited by the court to specifically the question asked by the court, to which the prosecutor objected.

"30. No request for a separation of witnesses was made or ordered by the court."

Appellant initially complains in the first assignment of error that the court erred by refusing to allow the prosecutor to speak privately with the arresting officer after appellee rested and before appellant presented evi-

dence. Second, appellant complains that the court deviated from accepted procedure by allowing appellee to present evidence first and refusing to allow full examination of the arresting officer. Generally, the matters raised in the first assignment of error challenge the procedures employed in conducting the hearing. Such questions are normally left to the sound discretion of the trial court. See Evid.R. 611(A); R.C. 2945.03; R.C. 2938.07; *State v. Jenkins* (1984), 15 Ohio St.3d 164, 165, 15 OBR 311, 312, 473 N.E.2d 264, 270, paragraph eleven of the syllabus, holding that variations in *trial* proceedings from the order specified by R.C. 2945.10 are within the sound discretion of the trial court. Accordingly, we will not reverse under the first assignment of error unless the appellant establishes that the trial court abused its discretion. An abuse of discretion connotes more than an error of law or judgment; it implies an unreasonable, arbitrary or unconscionable attitude on the part of the trial court. *State v. Moreland* (1990), 50 Ohio St.3d 58, 61, 552 N.E.2d 894, 898.

When the validity of a search or seizure is challenged by a suppression motion, the movant has the initial burden of establishing whether a warrant authorized the search or seizure. *Xenia v. Wallace* (1988), 37 Ohio St.3d 216, 218, 524 N.E.2d 889, 891; see, also, *id.*, paragraph one of the syllabus. Once the warrantless nature of the search has been established, the burden of showing the validity of the search falls on the state. *Id.* at 218, 524 N.E.2d at 891; see, also, *id.*, paragraph two of the syllabus. Thus, when a suppression motion is heard, it is not improper for the movant to present evidence first. Appellee presented the testimony of the arresting officer, as on cross-examination, to establish the nature of the search. We further note that there is no indication in the parties' agreed statement of facts that the prosecutor objected to the appellee's proceeding first. Although we find no error, if we did, we would hold that it was waived by the failure to object. Issues not presented for consideration below will not be first heard upon appeal. *Shover v. Cordis Corp.* (1991), 61 Ohio St.3d 213, 220, 574 N.E.2d 457, 462. We find no abuse of discretion.

When appellee finished examining the arresting officer, the prosecutor sought to speak to the officer privately before presenting his direct examination. The appellee objected and the court sustained the objection. The prosecutor then refused to present any evidence, apparently resting the state's case. The court then questioned the officer regarding the location of the traffic stop. The prosecutor then sought to re-examine the officer, but was restricted to the scope of the court's examination. Appellant asserts error in the court's ruling that the prosecutor could not consult with the arresting officer regarding this testimony. We find no error.

In *Geders v. United States* (1976), 425 U.S. 80, 96 S.Ct. 1330, 47 L.Ed.2d 592, the United States Supreme Court held that a criminal defendant could not be prevented from consulting his counsel between his direct and cross-examinations when a seventeen-hour overnight recess intervened. *Id.* at 91, 96 S.Ct. at 1336, 47 L.Ed.2d at 600–601. The court held that such a holding impinged a defendant's right to the assistance of counsel. *Id.* In reaching its holding, the court discussed generally the rule regarding sequestration of witnesses in the following manner:

"The judge's power to control the progress and, within the limits of the adversary system, the shape of the trial includes broad power to sequester witnesses before, *during*, and after their testimony.

" * * * The aim of imposing 'the rule on witnesses,' as the practice of sequestering witnesses is sometimes called, is two-fold. It exercises a restraint on witnesses 'tailoring' their testimony to that of earlier witnesses; and it aids in detecting testimony that is less than candid. * * * *Sequestering a witness over a recess called before testimony is completed serves a third purpose as well—preventing improper attempts to influence the testimony in light of the testimony already given.*

" * * * Applied to nonparty witnesses who were present to give evidence, the orders were within sound judicial discretion. * * *" (Emphasis added, citations omitted.) *Id.* at 87–88, 96 S.Ct. at 1335, 47 L.Ed.2d at 598–599.

The court then went on to discuss the distinction between a criminal defendant and a non-party witness. Ultimately, in *Perry v. Leeke* (1989), 488 U.S. 272, 109 S.Ct. 594, 102 L.Ed.2d 624, the Supreme Court held that a criminal defendant has no constitutional right to discuss his testimony while it is in progress. *Id.* at 283–285, 109 S.Ct. at 601–603, 102 L.Ed.2d at 635–637. Given the broad constitutional protections generally afforded a criminal defendant, we can conceive of no basis to afford a non-party witness a right refused to criminal defendants. Ultimately, it appears appellant complains he was not afforded the opportunity to prepare his case. The prosecutor has the responsibility to proceed at the appointed time. The time for preparation of the case is long before the arresting officer is called to the stand. The court's ruling did not constitute an abuse of discretion.

 Finally, the first assignment of error argues that the court erred by restricting the scope of the prosecutor's examination of the arresting officer to the matters inquired of by the court. Under Evid.R. 614(A), the court is entitled to call witnesses at its own behest. All parties are entitled to cross-examine these witnesses. Evid.R. 614(A). Generally, the scope of cross-

examination under the Ohio Rules of Evidence is limited only by what is relevant and matters affecting credibility. Evid.R. 611(B). However, we do not find that a trial court abuses its discretion in limiting cross-examination of a witness called by the court when that cross-examination in essence amounts to re-direct or re-cross-examination. Accordingly, appellant's first assignment of error is not well taken.

■ Appellant's second assignment of error actually contests the propriety of the form of appellee's motion to suppress. Appellant asserts that the motion did not provide adequate notice of the alleged basis for suppression. In *Xenia, supra,* the court held that the movant has a duty to "raise the grounds upon which the validity of the search or seizure is challenged in such a manner as to give the prosecutor notice of the basis for the challenge." Further, appellant points out that Crim.R. 47 (applicable pursuant to Traf.R. 20) provides that motions shall "state with particularity the grounds upon which [they are] made * * *." Appellant contends that the state received insufficient notice of the basis of the suppression motion because it referred to the breath-testing instrument as a "BAC Verifier" when, in fact, it was an "Intoxilyzer." Despite the different regulations applicable to each of these types of machines, we find no prejudice to appellant in appellee's misnomer.

The city law director ought to be well aware of the types of breath-testing instruments in use in his municipality. Regardless of whether a defendant requests formal discovery, the means to determine the type of test involved in a particular case are well within the law director's reach. Had the appellee's motion referred to the instrument involved in general terms such as a "breath testing instrument," we would find no prejudice to appellant as the prosecutor should possess the test results which would indicate the type of machine involved. Likewise, we find no prejudice as a result of appellee's misnaming the machine. The record does not indicate an improper conclusion that the state failed to establish the propriety of the calibration and RFI survey done upon the machine regardless of which machine was involved. Appellee had no duty to inform the state of the type of machine its agency used to test appellee's breath sample.

Appellant also complains that appellee's motion did not satisfactorily set forth the alleged bases for suppression of the test. The motion stated:

"Defendant states said stopping and arrest were done without a warrant and without probable cause.

"Defendant further states he was subsequently transported to the police station, where he submitted to a BAC Verifier Test.

"Defendant states said machine was not properly maintained nor calibrated, and further, the RFI Survey was either not done or done improperly."

■ The requirement that a suppression motion specifically delineate the grounds upon which a search or seizure is challenged exists so that the prosecutor can prepare his case and so that the court can make evidentiary rulings at the hearing and properly dispose of the merits. *Xenia, supra,* 37 Ohio St.3d at 218, 524 N.E.2d at 891. We find that the foregoing motion is sufficiently particular to meet those needs. Accordingly, appellant's second assignment of error is overruled.

Appellant's final assignment of error reiterates the arguments of the second assignment of error and more specifically asserts that the trial court erred by allowing appellee to proceed upon a suppression motion that did not conform to the requirements of Crim.R. 47. Appellant alleges that the court should not have proceeded when appellee's motion contained no citations and was not accompanied by a separate, supporting memorandum.

■ The record on appeal contains no indication that the prosecutor raised an objection below to the effect that the motion failed to comply with Crim.R. 47. As previously stated, issues not presented for consideration below will not be heard for the first time upon appeal. See *Shover, supra.* See, also, *Xenia, supra,* 37 Ohio St.3d at 220–221, 524 N.E.2d at 893–894. As the prosecutor did not offer this objection below and permitted the court to proceed, we find that any error in this respect is waived. As an aside, we note that Crim.R. 47 permits a motion to be made orally at the trial court's discretion. Any procedural defect in the written motion could be cured by oral motion at the hearing if the court chose to so permit. Appellant's third assignment of error is overruled and the judgment of the trial court is affirmed.

*Judgment affirmed.*

GREY, J., concurs.

STEPHENSON, P.J., concurs separately.

STEPHENSON, Presiding Judge, concurring.

I concur in the judgment of affirmance for the following reasons without consideration of the merits of the appeal.

The assigned errors are dependent upon a transcript of proceedings or an alternative thereto as permitted by App.R. 9(C) or 9(D). Appellant averred in its notice of appeal that "[t]he parties will submit an agreed statement of facts in lieu of having a transcript of the proceedings typed." See App.R.

9(B). On September 17, 1991, a document entitled "Agreed Statement of Facts" was filed. Said document recites testimony adduced at the hearing and further sets forth certain procedural rulings by the trial court. The document is signed by counsel for both parties. It was not, however, approved by the trial court.

App.R. 9 reads as follows:

"(D) Agreed Statement as the Record on Appeal. In lieu of the record on appeal as defined in subdivision (A) of this rule, the parties may, no later than ten days prior to the time for transmission of the record pursuant to Rule 10, prepare and sign a statement of the case showing how the issues presented by the appeal arose and were decided in the trial court and setting forth only so many of the facts averred and proved or sought to be proved as are essential to a decision of the issues presented. *If the statement conforms to the truth, it, together with such additions as the trial court may consider necessary fully to present the issues raised by the appeal, shall be approved by the trial court prior to the time for transmission of the record pursuant to Rule 10,* shall then be certified to the court of appeals as the record on appeal and transmitted thereto by the clerk of the trial court within the time provided by Rule 10." (Emphasis added.)

On appeal this court is confined to the record certified to it. See App.R. 12(A). Under App.R. 9(D), approval of the statement by the trial court is required. Accordingly, the proposed statement, which was not approved by the trial court, is not a part of the record pursuant to App.R. 9(D). See *Mansfield v. Bond* (Jan. 22, 1988), Richland App. No. CA–2495, unreported, 1988 WL 8504. Since the assignments of error are dependent upon the evidence, and such evidence is not properly before us, we must presume the correctness of the judgment below and affirm. *Ford v. Ideal Aluminum, Inc.* (1966), 7 Ohio St.2d 9, 36 O.O.2d 5, 218 N.E.2d 434; *Columbus v. Hodge* (1987), 37 Ohio App.3d 68, 523 N.E.2d 515.