DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Douglas D. Spitzer timely appeals the decision of the Medina Municipal Court which denied his motion to suppress the results of a breath test to determine his breath-alcohol content after he was stopped for a traffic violation. The court below admitted the results of the breath test. The trial court concluded that the State had substantially complied with administrative rules governing the radio frequency interference test of the breath test machine. The court also concluded that defendant/appellant failed to show that he was prejudiced by the failure of the state to strictly comply with the administrative rules. We affirm.
 I.
On March 1, 1997, Medina City Police officers saw appellant driving in an erratic manner, including driving left of the center line. The officers stopped appellant and detected the smell of alcohol on his breath. Following standard procedure, the police administered a breath test, using the Medina police department's B.A.C. Verifier ("breath test machine"). The results of the breath test indicated that appellant registered an alcohol level of fifteen hundredths of one gram of alcohol per two hundred ten liters of breath, which is beyond the legal acceptable limit. The police then charged appellant with driving under the influence of alcohol and/or drugs, in violation of R.C. 4511.19(A)(1) and driving with a concentration of alcohol greater than ten-hundredths of one gram per two hundred ten liters of breath, in violation of R.C. 4511.19(A)(3). Appellant was charged with other motor vehicle offenses which, along with the violation of R.C. 4511.19(A)(1), were later dropped.
Prior to the hearing on the charge of violation of R.C.4511.19(A)(3), appellant filed a Motion to Suppress as to the results of the breath test. On July 14, 1997, the court held a hearing on the motion to suppress. In his motion, appellant contended that the Medina City Police Department had not substantially complied with the requirements of the version of Ohio Adm. Code 3701-53-02(C) and its Appendix H which were in effect at the time of his arrest. This regulation required each breath test machine to be tested to determine its susceptibility to radio wave interference. In an order filed on December 4, 1997, the trial court denied appellant's motion to suppress, finding that there was substantial compliance with the code requirement and that the State's failure to strictly comply caused no prejudice to appellant. Appellant later pleaded no contest to the charge of violating R.C. 4511.19(A)(3) and he was sentenced to a partially suspended jail term and fine. He timely filed the instant appeal.
 II.
The former Ohio Adm. Code 3701-53-02(C) requires that the breath test machine be tested to determine its susceptibility to radio wave interference. Each police department is required to test each of the radios that it operates within a thirty-foot radius of the breath test machine. Any radio frequency interference ("RFI") is to be noted on Appendix H which is a diagram showing the breath machine location and noting the location of any radio interference. This procedure is designed to determine for each radio a perimeter around the breath test machine within which that radio must not be operated when the breath test machine is being used.
Appellant maintains that the Medina Police Department inaccurately performed the February 26, 1994 RFI test of the breath test machine, which was the last test done prior to appellant's arrest. Appellant argues that this inaccuracy failed to substantially comply with administrative regulations. Thus, according to appellant, the State failed to meet its burden of proof that appellant violated R.C. 4511.19(A)(3).
The record before this Court includes only the docket transcript and the transcript of the hearing on the motion to suppress. It does not include any exhibits which may have been admitted into evidence at that hearing. App.R. 9(B) assigns to the appellant the responsibility to transmit the entire record on appeal. Our review of the proceedings below is limited to the record certified to us. See State v. Ishmail (1978), 54 Ohio St.2d 402,406-407, and App.R. 12(A). Although both parties herein refer to the Appendix H diagrams rendered by the Medina Police in compliance with Ohio Adm. Code 3701-53-02, which were before the trial court at the hearing but were omitted from the record on appeal, we must limit our review to the transcript of the hearing. Thus we base our review on the transcript, the provisions of Ohio Adm. Code 3701-53-02 and the instructions on Appendix H. Where an appellant's assignments of error are dependent upon evidence that is not included in the record on review, the appellate court "must presume the correctness of the judgment below and affirm." State v. Malott, 79 Ohio App.3d 393,402 (Stephenson, J., concurring, citing Ford v. Ideal Aluminum,Inc. [1966], 7 Ohio St.2d 9, syllabus).
Appellant presents two assignments of error, which we will address in turn.
III. ASSIGNMENT OF ERROR I
 THE TRIAL COURT ERRED WHEN IT TOOK JUDICIAL NOTICE OF THE CHARACTERISTICS OF RADIO WAVES IN THE AIR, WHICH JUDICIAL NOTICE LED THE COURT TO DENY APPELLANT'S MOTION TO SUPPRESS THE RESULTS OF A MECHANICAL BREATH TESTING DEVICE.
In his brief, appellant actually argues that the court below, at the hearing on the motion to suppress, took judicial notice of two facts that were in dispute in this case. The first, according to the appellant, occurred when the court (after noting that "it would have helped if we had an engineer or physicist here") states "[radio] waves are very predictable, and that includes, quite frankly, whether they are measured at five-foot intervals. They are just as predictable one way or another unless you have a solid object in the way." Appellant objects to this "judicial notice" because neither the State nor appellant had presented evidence of the predictability of radio waves.
Ohio Rules of Evidence require that when one party disputes facts of which the court takes judicial notice, procedural fairness requires that a hearing be held to discuss the facts. Weissenberger, Ohio Evidence (1997) 47-48, Section 201.6. However, the court did not take judicial notice of the characteristics of radio waves. Although commented upon, the fact of predictability of radio waves was not part of the trial court's decision as presented in the court's findings of facts and conclusions of law regarding the motion to suppress. The "information" about radio waves as presented by the court is general in nature and appears to be based on the judge's individual understanding, in layman's terms, of the operation of waves.[1] The so-called judicial notice is no more than a reasonable interpretation of the manner that radio waves operate, which is in concert with the instructions in Appendix H for testing the mobile unit which Chief Hanwell read at the hearing upon defense counsel's request.
The second judicial notice, and the only one so labeled by the court below, is the judge's comment about the police department's failure to test the mobile car radios on axis five in addition to the test that was done on axis three. The RFI testing instructions require the car to be parked as close as possible to the breath test machine and the radio transmission activated. The police performed the test on axis three inside the police garage, which Chief Dennis Hanwell testified was as close to the breath test machine as the car could be parked.
Appellant argues that the mobile radios should have been tested at a presumptively closer point on axis five, which is just outside the police building. However, the judge took judicial notice that as to axis five, stating "there is no way in the world a motor vehicle could get closer than 15 feet, because the Court is aware where axis five is, so there is no way it could get closer [than it was on axis three]." Appellant challenges the judicial notice because, arguably, a police car could be parked on axis five at a point closer than that in the garage on axis three.
Ohio Evid.R. 201 reads in part:
 A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonable [sic] be questioned.
Evid.R. 201(B).
It was inappropriate for the trial judge to denominate his comments on the facts in issue as "judicial notice." The issue of how close to the breath test machine a car could be parked was a genuine issue of fact to be determined by the trial court. The state submitted evidence in the form of Chief Hanwell's testimony that the car parked in the garage on axis three was the location closest to the machine. Appellant contested this issue. Obviously, the fact is not one which is "generally known" or is beyond reasonable dispute such that judicial notice could appropriately be taken. Thus, the trial court's decision to take judicial notice of the fact was clearly erroneous. However, this Court finds that such error was harmless.
According to Weissenberger, Ohio Evidence (1997) 46, Section 201.6, a party who challenges the taking of judicial notice is entitled to a hearing on the matter by way of procedural fairness under Evid.R. 201(E). In the case sub judice, this issue was discussed at some length, with appellant proposing that the mobile unit should have been tested on both axis five and axis three. Appellant did not dispute that the instructions on Appendix H directed that the mobile unit be tested at the point closest to the breath test machine. Further, Chief Hanwell testified that the closest point to the machine was in the garage, on axis three, which is where the unit was tested. Appellant offered no evidence to contradict this testimony. The court had the discretion to weigh the evidence before it, including all reasonable inferences therefrom, and to make an independent determination of the facts, including the appropriate test location for the mobile unit.
Since the diagram was before the trial court, and since it was not submitted in the record for review, we cannot say that the trial court's findings of fact were based on impermissible judicial notice rather than on an independent measure of the evidence. See State v. Malott, 79 Ohio App.3d at 402 (Stephenson, J., concurring). Thus, we cannot say that appellant was prejudiced by the acknowledgement of the judge that he had personal knowledge of the facts in evidence. Consequently, appellant's first assignment of error is overruled.
IV. ASSIGNMENT OF ERROR II
 THE TRIAL COURT ERRED WHEN IT OVERRULED DEFENDANT-APPELLANT'S MOTION TO SUPPRESS THE RESULTS OF A MECHANICAL ANALYSIS OF HIS BREATH BECAUSE THE STATE FAILED TO ESTABLISH SUBSTANTIAL COMPLIANCE WITH OHIO ADMINISTRATIVE CODE § 3701-53-02, APPENDIX "H."
The Ohio Supreme Court held in State v. Plummer (1986),22 Ohio St.3d 292, 294 that "strict compliance is not always realistically or humanly possible" where administrative code requires the State to perform in a specified manner, such as in testing breath alcohol test machines. The Court held that if the State has substantially complied with the requirements of the code, then the burden shifts to the defendant to show that he was prejudiced by the State's failure to strictly adhere to the requirements of the code.
Appellant's second assignment of error states that the trial court erred in overruling his motion to suppress the breath test evidence, because the State failed to substantially comply with the requirements of Ohio Adm. Code 3701-53-02(C) and its Appendix H in testing the breath test machine for RFI. Two Medina City Police officers performed the February 26, 1994 RFI tests. Each officer held a hand-held radio. One officer stood next to the breath test machine and received transmissions sent by the second officer at approximately five-foot intervals along each of the eight axes. Appellant specifically objects to the fact that the transmission was not continuous, and that the marking of any objectionable interference was done only at five-foot increments, rather than at one-foot increments.
By appellant's calculation, if the radio transmission was tested at one-foot intervals, rather than at five-foot intervals, there would have been two hundred forty such tests rather than the forty-eight tests done, which was slightly more than twenty percent of the possible test intervals. Appellant contends that testing at only twenty percent of the potential test marks does not reach the level of substantial compliance with the Code provisions. Implicit in appellant's argument is the possibility, for example, that a radio wave transmitted at a ten-foot radius, then at a five-foot radius, would not interfere with the breath test machine at either of those spots, but would interfere if the transmission occurred at an eight-foot radius.
Appellee cites two cases which deal specifically with the issue of non-continuous transmission testing for RFI of breath test machines, City of Union v. Reier (Oct. 23, 1990), Montgomery App. No. 12049, unreported, and State v. Williams (1992), 82 Ohio App.3d 39. The Reier court held that non-continuous radio transmission amounted to substantial compliance with Ohio Adm. Code3701-53-02(C). In Williams, the court cited testimony presented at trial by an engineer employed by the manufacturer of the B.A.C. Verifier (the same breath test machine used by the Medina police). The expert stated that intermittent transmission of the radio waves is acceptable practice. He acknowledged that in his hundreds of tests of that machine, "I've never found the RFI board to, in one case, find a pocket where if I started at 17 feet and come in, I'm able to trigger that mechanism, whereas if I started at five feet, I'm not triggering it." State v. Williams,82 Ohio App. 3d at 42. Appellant argues that there are or may be such "pockets" between the five-foot intervals tested by the Medina police.
The testimony of the expert in Williams is confirmed by the Appendix H instructions for testing mobile radio units on police vehicles, which Chief Hanwell read at the hearing. The instructions say that the vehicle should be parked as close as possible to the breath test and then the radio signal should be transmitted. If appellant's theory is correct, the instructions should demand that the vehicle be tested in all possible positions along the thirty-foot radius on the eight axes, not just at the nearest possible point.
Appellee maintains that the five-foot incremental testing was sufficient, in that no interference was registered except when a hand-held unit was placed just above the breath test machine. When RFI was detected at the machine itself, the police should have tested backwards in one foot increments, to determine at just what point between one and five feet the hand-held units actually began to interfere with the breath test machine. According to the testimony of Chief Dennis Hanwell, this test was substantially performed: "We got up to the machine, within a foot of it, with both hand-helds [radios] without it showing any interference at all; therefore, we marked both forms [Appendix H] that no radio interference was detected." Only when the radios were held just above the machine was any RFI detected, indicating that the internal RFI detector was operating properly. Although the testing which was done beyond this one-foot radius of the machine was done at five-foot increments, this testing left only a small area untested, that is the area between the one-foot radius (where there was still no interference) to the point of interference above the machine itself (where interference occurs). Even appellant does not argue that this small area is a problem; he requests only that testing be done at one-foot intervals.
Appellant claims substantial compliance was not reached in this case because the surveying officers themselves did not know whether there could be pockets of interference between the five-foot test intervals. However, appellant does not offer any authority for his proposition that substantial compliance requires that the personnel in charge of compliance must understand the scientific or technical rationale for the code requirement.
On the authority of City of Union v. Reier, supra, we find that the State has substantially complied with the requirements of Ohio Adm. Code 3701-53-02(C) and Appendix H. Once the State has substantially complied with the code requirement, appellant has the burden to show that he has been actually prejudiced by the State's failure to strictly comply with the code. This he has not done. Therefore, appellant's second assignment of error is overruled and the judgment of the trial court is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Medina Municipal Court, County of Medina, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellant.
Exceptions.
WILLIAM R. BAIRD, FOR THE COURT
SLABY, J., CONCURS.
[1] The problematic reference, from appellant's perspective, is the comment about radio waves being "predictable, * * * quite frankly, whether they are measured at five-foot intervals." Appellant argues that the Medina Police Department's RFI testing of its breath test machine did not substantially comply with the code requirement, because the officer tested the hand-held radio units only at five-foot intervals, rather than in a continuous manner along each of the eight axes to be tested. Appellant contends that there may be points between two intervals where the radio waves do affect the breath test machine.
[2] I note also that Spitzer failed to object in a timely manner to the trial court's alleged judicial notice of the operation of radio waves. Although he did inquire whether the trial court would entertain a brief on its ruling, he did not specifically raise the issue of allegedly improper judicial notice until a July 29, 1997 motion for a new hearing.